[No. S127649. June 8, 2006.]

BAYARD M. ORDLOCK et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Eric M. Zolt; Bingham McCutchen, Vreeland Law Firm, Clayton J. Vreeland and Donald J. Kula for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, David S. Chaney, Assistant Attorney General, W. Dean Freeman, Michael R. Weiss, Gregory S. Price, William L. Carter and Amy J. Winn, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**GEORGE, C. J.**—California personal income tax law references its federal counterpart as the basis upon which to calculate a taxpayer's state taxable income and, ultimately, the state income tax owed for a specified tax period. California law does so by recognizing the amount reported as taxable income in the taxpayer's federal income tax return and then applying adjustments to that amount as required by state law. Accordingly, in the majority of cases, a determination in an audit by the Internal Revenue Service (IRS) that a California taxpayer's federal personal income tax liability is greater than reported in his or her federal income tax return also will effect an increase in the taxpayer's state personal income tax liability.

In general, when a California taxpayer owes additional state personal income tax for a particular tax year, and unless another provision of the Revenue and Taxation Code applies, section 19057 of that code requires that the California Franchise Tax Board (FTB) provide notice to the taxpayer of any deficiency assessment within four years of the date on which the taxpayer filed his or her state income tax return for the tax year in question. In the specific circumstance in which a California taxpayer receives a final IRS determination changing or correcting his or her federal personal income tax return for a particular tax year, Revenue and Taxation Code section 18622 requires that within six months, the taxpayer report to the FTB any federal adjustment that will increase the taxpayer's state tax payable for the same period.[1] When the taxpayer reports such an adjustment within six months, the FTB must provide notice of any related deficiency assessment within two years. (§ 19059.) When the taxpayer fails to report such an adjustment, the FTB may give notice of a deficiency assessment at any time. (§ 19060.)

In the present case, the IRS audited the federal income tax return of the taxpayers, plaintiffs Bayard M. Ordlock and Lois S. Ordlock, for a particular tax year and eventually determined—more than four years after the date on which the taxpayers filed their federal and state income tax returns for that tax year—that the taxpayers received greater taxable income than they reported and owed additional federal income taxes. Although the change in federal taxable income had the effect of increasing the taxpayers' state taxable income and income tax for the same period, they did not report the federal adjustments to the FTB pursuant to section 18622. Following their unsuccessful administrative appeal of the state's eventual deficiency assessment and their payment of the assessed taxes, the taxpayers filed a civil action seeking a refund. The appellate court agreed with the taxpayers that, because the four-year period prescribed by section 19057 for the FTB to provide notice of any deficiency assessment had expired *prior* to the final IRS

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

determination of the taxpayers' additional federal tax liability, the taxpayers were not required to report the federal changes or pay the additional state taxes assessed.

We consider the correctness of the Court of Appeal's holding. As we shall explain, in affording the FTB a four-year period of limitations in which to notify a taxpayer of a state tax deficiency assessment, section 19057 by its terms does not establish an outermost time limit for notification by that agency in all circumstances. Instead, an alternative period of limitation applies when, after the taxpayer files his or her tax return, the IRS intervenes and finally determines that the taxpayer's federal taxable income and tax liability are greater than reported in his or her federal return for a particular tax year, with resulting increases in state taxable income and the amount of state income tax calculated thereon for the same period. In the event of such IRS intervention, section 19059 or section 19060 provides an alternative period during which the FTB may notify the taxpayer of a deficiency assessment, the duration of which depends upon when or *whether* the taxpayer reports to the FTB the final results of the federal authorities' examination of the taxpayer's return.

In the present case, the taxpayers failed entirely to report pursuant to section 18622 the federal changes that increased their state income tax liability. As a consequence, the FTB had an unlimited time in which to issue its notice of a deficiency assessment pursuant to section 19060. Accordingly, we reverse the judgment of the Court of Appeal.

# I

The material facts are not in dispute. Having obtained an automatic extension, plaintiffs Bayard M. and Lois S. Ordlock in May 1984 timely filed, as married, filing jointly, their federal and state personal income tax returns for the 1983 tax year. Their federal income tax return reflected their having taken, as deductions, certain expenses related to three partnerships in which Mr. Ordlock held minority interests.

Thereafter, the IRS commenced partnership-level audits of the partnerships' federal tax returns for 1983 and subsequent tax years. Eventually, the IRS offered and plaintiffs accepted a settlement with regard to their interests in two of the partnerships reported on their 1983 federal income tax return. In 1994, the IRS issued a report of tax examination changes reflecting disallowances of deductions attributable to those partnership interests. In 1996, the IRS issued a report of tax examination disallowances of deductions related to the third partnership interest, as well as a final report reflecting an increase in plaintiffs' federal taxable income for the 1983 tax year. Although the increase

in their federal taxable income also caused an increase in their state taxable income and the state taxes calculated thereon for 1983, plaintiffs did not notify defendant FTB of the interim or final IRS audit reports of income tax changes.

In May 1998, defendant mailed plaintiffs a notice of proposed assessment of additional state income tax for the 1983 tax year in the amount of $12,350, with accumulated interest in the amount of $35,215.62, based upon the increase in state taxable income resulting from the increase in federal taxable income determined in the IRS tax audit. Defendant's notice advised plaintiffs that pursuant to section 18622, they must report any federal changes resulting in increased state taxes payable "for any year."

Plaintiffs timely filed a tax protest, principally on the ground that, pursuant to section 19057, defendant must provide notice of any deficiency assessment within four years from the date on which plaintiffs filed their 1983 income tax returns in May 1984—and that this period had expired in May 1988, well before the IRS made its final determination adjusting plaintiffs' 1983 federal income taxes. According to plaintiffs, because defendant was precluded by operation of section 19057 from assessing additional state taxes after May 1988, the federal tax changes rendered by the IRS more than 10 years later did not, and could not, "increase the amount of tax payable under this part" as provided in section 18622, subdivision (a). Plaintiffs asserted that this circumstance absolved them of any statutory duty to report the federal tax changes to defendant. In January 2000, defendant denied plaintiffs' tax protest. Subsequently the State Board of Equalization (SBE) denied plaintiffs' administrative appeal and petition for rehearing.

In January 2002, defendant mailed plaintiffs a revised notice of state tax due for the 1983 tax year in the amount of $12,350, with accumulated interest in the amount of $52,297.67, totaling $64,647.67. Plaintiffs paid the tax portion of the total amount under protest and filed with the SBE a claim for a refund, which was denied.

In July 2002, plaintiffs filed in the superior court an action against defendant seeking a refund of the taxes paid under protest and alleging that defendant was precluded from issuing a notice of the proposed assessment for the 1983 tax year after the four-year period of limitations provided by section 19057 had expired. After defendant filed an answer to the complaint, both parties moved for summary judgment. Plaintiffs continued to assert that the expiration of the four-year period of limitations set forth in section 19057 barred defendant from initiating any deficiency assessment, and thus relieved plaintiffs of any duty under section 18622 to report to defendant the subsequent IRS changes to their federal tax liability that increased the state

taxes they owed. Defendant urged that, because plaintiffs failed to comply with section 18622 by reporting the increase in plaintiffs' 1983 state taxes payable within six months of the final determinations by the IRS in 1994 and 1996 that increased plaintiffs' 1983 federal tax liability, section 19060 afforded defendant the opportunity to assess a deficiency for the 1983 tax year "at any time."

The trial court denied plaintiffs' motion and granted defendant's motion for summary judgment. The court determined that section 19057 did not bar defendant from assessing additional state taxes for the 1983 tax year because, by its terms, section 18622 required plaintiffs to report to defendant corrections by the IRS to plaintiffs' federal tax return "for any year" that changed their federal tax liability and increased the state taxes they owed. Because plaintiffs failed to report the changes to defendant, section 19060 applied, permitting defendant to mail a notice of deficiency assessment "at any time."

The Court of Appeal concluded to the contrary that, by operation of section 19057, defendant was precluded from assessing additional state tax for the 1983 tax year *prior to* the IRS determination increasing plaintiffs' federal tax liability for that period. Reasoning that section 18622 did not act to revive or sustain defendant's authority to impose additional taxes once the four-year period of limitations set forth in section 19057 had expired in 1988, the Court of Appeal reversed the judgment rendered by the trial court. We granted defendant's petition for review.

## II

### A

As we have observed, California income tax law generally is based upon federal income tax law. (9 Witkin, Summary of Cal. Law (9th ed. 1989) Taxation, § 287, p. 344.) State law provides that subject to exceptions, gross income, adjusted gross income, and taxable income for state tax purposes are defined as their equivalents for federal tax purposes. (See §§ 17071, 17072, & 17073, subd. (a).) Thus, an increase in the amount of a taxpayer's federal taxable income generally will signify an increase in the amount of his or her state taxable income.

Several years ago, the Legislature amended Revenue and Taxation Code, division 2 to add part 10.2, Administration of Franchise and Income Tax Laws, encompassing sections 18401 through 19802 and including the sections relevant in the present case. (Stats. 1993, ch. 31, § 26, p. 152.) The former version of section 18622, subdivision (a), as enacted and also

amended in that year, is the version operative here, as the parties agree.[2] (Stats. 1993, ch. 877, § 23.1, p. 4712.) Until its further amendment in 1999, section 18622, subdivision (a) provided, as relevant to our discussion: "If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue . . . that taxpayer shall report the change or correction . . . within six months after the final federal determination of the change or correction . . . or as required by the Franchise Tax Board, and shall concede the accuracy of the determination or state wherein it is erroneous. *The changes or corrections need not be reported unless they increase the amount of tax payable under this part.*" (§ 18622, subd. (a) as amended by Stats. 1993, ch. 877, § 23.1, p. 4712, italics added.) As is clear, the last sentence refers to part 10.2.[3]

■ In imposing a general duty upon a state taxpayer to report an adjustment in federal gross income or deductions engendered by, among several possible causes, an IRS audit of the taxpayer's federal tax return for a particular tax year, section 18622, subdivision (a) specifically exempts the taxpayer from the duty to report whenever the federal adjustment does not increase the amount of his or her payable state tax. Although in most instances federal changes will result in an increase in the amount of state tax, an increase does not occur, for example, when the amount of a taxpayer's federal itemized deduction for state taxes paid is adjusted downward. Although that adjustment will have the effect of increasing taxable income for federal tax purposes, it will not have any impact on state taxable income because, of course, there is no corresponding deduction on the state tax return.

---

[2] As did the Court of Appeal, for convenience we shall refer to sections 18622, 19059, and 19060 "with the understanding that we are referring to the former versions of the statutes." (§ 18622, as amended by Stats. 1993, ch. 877, § 23.1, p. 4712; § 19059, as amended by Stats. 1993, ch. 877, § 28, p. 4717; § 19060, added by Stats. 1993, ch. 31, § 26, p. 217.)

[3] In 1999, the Legislature rewrote the final sentence of section 18622, subdivision (a), which formerly referred to the part of the code inclusive of that section—part 10.2—to provide: "For any individual subject to tax under *Part 10 (commencing with Section 17001)*, changes or corrections need not be reported unless they increase the amount of tax payable under *Part 10 (commencing with Section 17001)* for any year." (Stats. 1999, ch. 987, § 56, eff. Oct. 10, 1999, italics added.) Part 10, Personal Income Tax, *is comprised of sections 17001* through 18180 (defining and calculating gross income, adjusted gross income, and taxable income, as well as imposing tax), and does not include the sections that are the subjects of the parties' dispute in the present case. Although the question is not before us, it may be surmised that the Legislature intended to clarify that "the amount of tax payable" referred to the tax imposed upon *taxable income as required by the statutes that appear within part 10.*

The Legislature also provided in the 1999 amendment: "The amendments made by this act to Sections 18622, 19059, 19060, and 19311 of the Revenue and Taxation Code apply to federal determinations that become final (as defined by this act) on or after January 1, 2000." (Stats. 1999, ch. 987, § 105.) In the present case, the federal determinations became final prior to January 1, 2000, and thus the earlier versions of sections 18622, 19059, and 19060 apply.

As might be expected, defendant contends that the final sentence of section 18622, subdivision (a)—providing that "[federal] changes or corrections need not be reported unless they increase the amount of tax payable under this part"—merely excludes those changes in federal tax liability that do not also effect an increase in the amount of state taxable income and state tax payable for the tax year in question, as in the example above. Defendant observes that in plaintiffs' case, the IRS's changes to their federal tax liability also increased their state tax liability, requiring them to report the federal changes. Because plaintiffs failed to report the federal changes pursuant to section 18622, subdivision (a), defendant claims it could give them notice of the deficiency assessment at any time pursuant to section 19060.

By contrast, plaintiffs assert and the Court of Appeal reasoned that the final sentence of section 18622, subdivision (a) also could refer, and here does refer, to IRS adjustments increasing federal taxable income and consequently to state taxable income that generates additional state income tax—tax that has become "payable" because defendant has sent plaintiffs a notice of a proposed deficiency assessment. Relying upon the four-year limitations period provided by section 19057, plaintiffs claim that by 1988, defendant was precluded from issuing and enforcing a state income tax deficiency assessment of any kind for the 1983 tax year, *regardless* of the circumstance that the subsequent IRS examination changed the taxpayers' federal tax liability for that period. Accordingly, section 18622, subdivision (a) did not require plaintiffs to report, and they did not report, the federal changes.

At first blush, these diverse interpretations of the final sentence in section 18622, subdivision (a) appear to warrant consideration not only of general principles of statutory construction (see, e.g., *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976]), but also of rules that apply when statutory language fairly admitting of two reasonable constructions is deemed ambiguous. (See, e.g., *Flannery v. Prentice* (2001) 26 Cal.4th 572, 579 [110 Cal.Rptr.2d 809, 28 P.3d 860]; *Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 520–522 [106 Cal.Rptr.2d 548, 22 P.3d 324].) In the latter event, defendant urges that we apply the rule that a court charged with interpreting an ambiguous statute must accord great weight to its administrative construction (citing *Mudd v. McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10]; *Coca-Cola Co. v. State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]), whereas plaintiffs emphasize, and the Court of Appeal cited, the principle that ambiguity in a tax statute must be resolved in favor of the taxpayer. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 329–330 [87 Cal.Rptr.2d 423, 981 P.2d 52]; *Edison California Stores v. McColgan* (1947) 30 Cal.2d 472, 476 [183 P.2d 16].)

On further consideration, however, we observe that plaintiffs' construction of section 18622, subdivision (a) is premised upon the applicability of section

19057 to foreclose defendant from giving notice to plaintiffs of any deficiency assessment after the expiration of the four-year period, irrespective of the impetus for the assessment, and to render defendant's notice of proposed assessment of no effect. If section 19057 does not apply in the present case, then the premise for plaintiffs' interpretation of section 18622, subdivision (a) disappears. We do not have any occasion to decide which is the most reasonable construction of section 18622, subdivision (a), based upon a perceived ambiguity in that statute, unless we determine that plaintiffs' construction of the statute, premised upon the applicability of section 19057, is reasonable. (See *Flannery v. Prentice, supra,* 26 Cal.4th 572, 579.) Accordingly, we first decide whether section 19057, rather than another statute of limitations, actually *does* apply in the event the IRS has made changes increasing federal tax liability more than four years after the date on which the taxpayers filed their corresponding state tax return.

## B

■ Section 19057, subdivision (a) provides that *"except as otherwise expressly provided in this part,"* defendant must mail any notice to the taxpayer of a proposed deficiency assessment within the four-year period following the filing of the state tax return. (Italics added.)[4] Thus, by its express terms, section 19057 contemplates that in certain circumstances an *alternate* statute of limitations will apply to defendant's mailing of a proposed deficiency assessment. The provisions that follow, sections 19059 and

---

[4] The parties do not agree which version of the four-year statute of limitations applies in these circumstances. Plaintiffs apparently assert that the operative provision is former section 18586, which was repealed effective January 1, 1994 and replaced with section 19057. (Stats. 1993, ch. 877, § 21, p. 4711.) From 1983 through 1993 (with minor modifications of no significance here), former section 18586 provided: "Except in case of a fraudulent return *and except as otherwise expressly provided in this part,* every notice of a proposed deficiency assessment shall be mailed to the taxpayer within four years after the return was filed. No deficiency shall be assessed or collected with respect to the year for which the return was filed unless the notice is mailed within the four-year period or the period otherwise fixed." (Stats. 1961, ch. 500, § 8, p. 1604, italics added.)

Defendant asserts on the other hand that the operative provision is section 19057 as enacted and amended in 1993 (Stats. 1993, ch. 31, § 26, p. 215; Stats. 1993, ch. 877, § 27, p. 4716) and effective January 1, 1994, until its further amendment in 1998. (Stats. 1998, ch. 322, § 48, eff. Aug. 20, 1998.) Prior to the latter amendment, section 19057, subdivision (a) provided: "Except in the case of a false or fraudulent return *and except as otherwise expressly provided in this part,* every notice of a proposed deficiency assessment shall be mailed to the taxpayer within four years after the return is filed. No deficiency shall be assessed or collected with respect to the year for which the return was filed unless the notice is mailed within the four-year period or the period otherwise provided." (Italics added.)

Because the pertinent provisions of former section 18586, subdivision (a), are substantially similar to those of section 19057, subdivision (a), our conclusion will not differ depending upon whether the former or the latter statute is deemed to apply. As did the Court of Appeal, we shall apply section 19057 and refer to that statute with the understanding we are referring to its former version.

19060, make it clear that special limitations periods apply to defendant when the IRS changes a taxpayer's federal tax liability—*whether or not* the taxpayer reports the change to defendant.

■ Section 19059 sets forth the time period during which defendant may send notice to a taxpayer of a proposed deficiency assessment in the event the taxpayer *timely* reports a final federal determination of a change or correction. Prior to its amendment in 1999, section 19059, subdivision (a) specified that if a taxpayer is required by section 18622, subdivision (a), to report a change or correction by the IRS and *does* report the change or correction within six months after the final federal determination, "a notice of proposed deficiency assessment resulting from those adjustments may be mailed to the taxpayer within two years from the date when the notice is filed with [defendant] by the taxpayer, or within the periods provided in Section 19057, 19058, or 19065, *whichever period expires later*." (Italics added.)

■ Section 19060 sets forth the time periods during which defendant may notify the taxpayer of a proposed deficiency assessment in the event a taxpayer required by section 18622 to report does not timely report, or fails to report, a change or adjustment by the IRS. Prior to the amendment of section 19060 in 1999, subdivision (b) provided that if a taxpayer reports to defendant a change by the IRS later than six months following the final federal determination of a change as prescribed in section 18622, defendant may mail a notice of proposed deficiency assessment "within four years from the date the taxpayer . . . notifies [defendant] of [the federal] change." Section 19060, subdivision (a), of most relevance here, specified that "if a taxpayer *fails to report a [federal] change* . . . a notice of proposed deficiency assessment resulting from the adjustment may be mailed to the taxpayer *at any time* . . . ." (Italics added.)[5]

As we shall explain, we agree with defendant that, in light of the circumstances of the present case—involving taxpayers who failed entirely to report a final federal determination that increased their federal tax liability

---

[5] The parties agree that the former version of section 19060 (added by Stats. 1993, ch. 31, § 26, p. 217), in effect from 1994 to 1999, is the operative statute. Until its amendment (Stats. 1999, ch. 987, § 72, eff. Oct. 10, 1999), section 19060, former subdivision (a) provided, in relevant part: "If a taxpayer fails to report a change or correction by the Commissioner of Internal Revenue . . . or fails to file an amended return as required by Section 18622, a notice of proposed deficiency assessment resulting from the adjustment may be mailed to the taxpayer *at any time* after the change, correction, or amended return is reported to or filed with the federal government." (Italics added.) Subdivision (b) provided: "If, after the six-month period required in Section 18622, a taxpayer reports a change or correction by the Commissioner of Internal Revenue . . . or files an amended return as required by Section 18622, a notice of proposed deficiency assessment resulting from the adjustment may be mailed to the taxpayer within four years from the date the taxpayer notifies [defendant FTB] of that change or correction or files that return." (Stats. 1993, ch. 31, § 26, p. 217.)

and consequently increased their state taxes payable—section 19060, subdivision (a) applied, permitting defendant at any time to mail plaintiffs notice of the proposed deficiency assessment based upon the additional state taxes payable for the 1983 tax year.

■ As we previously have stated, " '[i]n construing statutes, we must determine and effectuate legislative intent.' [Citation.] 'To ascertain intent, we look first to the words of the statutes' [citation], 'giving them their usual and ordinary meaning.' [Citation.]" (*Lennane v. Franchise Tax Bd.*, *supra*, 9 Cal.4th 263, 268.) It is evident that section 19057, subdivision (a), affording defendant four years to mail the taxpayer notice of a proposed deficiency from the date the taxpayer filed his or her return, is not intended to be the sole limitations period applicable to defendant in performing that task, but instead applies *"except as otherwise expressly provided in this part."* (Italics added.)[6] The italicized phrase makes it incumbent upon us to consider the circumstances under which the alternative limitations statutes apply.

■ In addition, we are required to harmonize statutes by considering a particular clause or section in "the context of the . . . statutory scheme of which it is a part." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "[P]rovisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In light of the similarity of the phrases employed, the entities referred to, and the subjects of sections 19057, 19059, and 19060, and other sections within

---

[6] Plaintiffs acknowledge that section 19057 includes an exception to its own applicability, specified for express provisions that otherwise are within the same part of the Revenue and Taxation Code. Plaintiffs conclude, however, that in their case those provisions—sections 19059 and 19060—*cannot* apply. Plaintiffs observe that these two statutes prescribe alternative periods of limitation when the taxpayer belatedly reports, or fails to report, the federal changes *"as required by Section 18622."* Plaintiffs assert they were *not* required by section 18622 to report, because the increase in their state tax liability resulting from the federal changes did not become payable due to the expiration of the four-year period of limitations provided in section 19057; thus defendant was precluded from mailing notice of a proposed deficiency assessment. Therefore, the statutory condition precedent to the applicability of section 19059 or 19060 was not present.

In attempting to establish that defendant was foreclosed from noticing a deficiency assessment after four years elapsed from the date the tax returns were filed (§ 19057, subd. (a)), and thus that 18622, subdivision (a) did not apply to them, plaintiffs rule out the possibility that other statutory periods of limitation were applicable based upon the inapplicability of section 18622—a circumstance that in turn was due to the expiration of the four-year period of limitations (§ 19057, subd. (a)). Plaintiffs' argument is circular or begs the question. Instead of providing "reasons, or premises, in an attempt to prove its conclusion," "the supporting premises merely repeat or rephrase what is stated in the conclusion." (Engel, With Good Reason—An Introduction to Informal Fallacies (6th ed. 2000) ch. 4, p. 162.)

that statutory sequence (cf. §§ 19057–19065), it is evident that the phrase of exception provided in section 19057 refers to the applicability of one of those provisions.[7]

▮ It also is " 'well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former.' " (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].) Section 19057, subdivision (a) generally is applicable in the routine case in which, for example, a taxpayer files his or her federal and state income tax returns for a given tax year and the IRS does not undertake a subsequent tax examination of the federal tax return for that year. Sections 19059 and 19060 make it clear that special limitations periods apply when the IRS has changed the taxpayer's federal tax liability—creating a two-year limitations period when the taxpayer reports the changes within six months, establishing a four-year limitations period when the taxpayer untimely reports the changes, and recognizing an absence of limitation when the taxpayer entirely fails to report. Thus, those statutes, prescribing alternative periods of limitations when the federal government does choose to examine tax returns previously filed, create exceptions to the general statute that reflect the open status of those tax returns.

▮ Our view that, when changes to tax liability are effected by the IRS, the general limitations period provided in section 19057 is replaced by a special limitations period provided in section 19059 or 19060, is consistent with the interpretation given these statutes by the SBE.  ▮ As we previously have explained, although we have the ultimate responsibility of construing these statutes, in general we accord significant weight and respect to a long-standing statutory construction—whether in the form of a policy or a rule—by the agency charged with enforcement of the statute. (*Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th 310, 322; see *In re Dannenberg* (2005) 34 Cal.4th 1061, 1082 [23 Cal.Rptr.3d 417, 104 P.3d 783]; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–14 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) The SBE has concluded that when the IRS has made changes to a taxpayer's reported gross income or deductions, the

---

[7] In this court, plaintiffs assert for the first time that, to the extent the statutes providing special limitations periods (§§ 19059 and 19060) and the reporting statute (§ 18622) would "revive" or "reopen" a limitations period after it is closed (§ 19057), they are unconstitutional. Plaintiffs rely upon *Chambers v. Gallagher* (1918) 177 Cal. 704, 708–709 [171 P. 931], holding unconstitutional a statute expressly reopening a closed limitations period for the assessment of inheritance taxes. As defendant points out, a court has no occasion to consider a contention (including a constitutional challenge) in a suit for a tax refund, unless the contention previously was raised in the administrative claim for a tax refund. (See, e.g., *Barclays Bank Internat. Ltd. v. Franchise Tax Bd.* (1992) 10 Cal.App.4th 1742, 1749 [14 Cal.Rptr.2d 537]; *Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 487–491 [286 Cal.Rptr. 690].) In any event, our interpretation of the cited statutes is not premised upon the reopening of a closed limitations period.

four-year limitations statute does not apply. (See, e.g., *Appeal of Eddlemon* (Dec. 12, 1995) 95 SBE 015 [Cal.Tax Rptr. (CCH) ¶ 402-813, p. 28,407]; *Appeal of Magidow* (Nov. 17, 1982) 82 SBE 274 [Cal.Tax Rptr. (CCH) ¶ 400-737, p. 23,129].) In the latter case, the SBE stated: "Section 18586 [the predecessor of section 19057] is a general statute of limitations and it expressly provides for exceptions to the general rule. Either of two exceptions applies when federal changes are made to a taxpayer's gross income or deductions, depending on whether or not the taxpayer reports the changes to the Franchise Tax Board in a timely fashion as required by section 18451 [the predecessor of section 18622] of the Revenue and Tax Code." (*Id.* ¶ 400-737, at p. 23,131.)

The SBE has explained that if the four-year limitations period were to apply, defendant would be unable to employ the final federal adjustments as the basis for its assessments whenever such adjustments are substantially delayed because the taxpayers contested their federal assessment by pursuing administrative review with the IRS or additional review in the federal court system. (*Appeal of Gebler* (Aug. 18, 1980) 80 SBE 101 [Cal.Tax Rptr. (CCH) ¶ 206-465, p. 14,965-86].) It is unlikely the Legislature intended to afford such preferential treatment to litigious taxpayers or to depend to such an extent upon prompt action by the federal authorities. (*Id.* at p. 14,965-87.)

Moreover, under plaintiffs' approach, any taxpayer who managed to prolong an audit of his or her federal tax return for a particular year—and thus, to prolong the final federal determination of additional tax liability—four years or more from the date on which he or she filed the state tax return for that year, would avoid liability for additional state taxes otherwise payable as a result of the federal changes. It is equally unlikely that the Legislature intended to reward a taxpayer's gamesmanship, delay, and avoidance of legal obligations, and in effect to charge with payment of additional state taxes only those law-abiding taxpayers who report federal audit changes.

In the present case, because plaintiffs' 1983 federal tax return was corrected by the IRS in a manner that increased their state tax liability for the corresponding period, section 19057 did not apply.[8] Because plaintiffs failed

---

[8] Pursuant to California Rules of Court, rule 29.1, plaintiffs have filed a supplemental brief directing our attention to legislation that was proposed by defendant (Assem. Bill No. 1630 (2005–2006 Reg. Sess.)) following the filing of plaintiffs' answer brief, purporting to clarify section 18622, subdivision (a) by deleting the word "payable" and making other modifications to that section and section 19057. Plaintiffs assert that the proposed modifications further support their view that they were not required by section 18622 to report the tax changes to defendant, because the four-year limitations period had expired. (Sen. Rules Com., 3d reading analysis of Assem. Bill No. 1630 (2005–2006 Reg. Sess.) as amended Mar. 29, 2005; Assem. Com. on Revenue and Taxation, 3d reading analysis of Assem. Bill No. 1630 (2005–2006 Reg. Sess.) as amended Mar. 29, 2005.) Plaintiffs urge that the nature of the proposed modifications

to report the change to defendant, section 19060, subdivision (a) instead applied. As we recognized earlier, plaintiffs' assertion that section 18622, subdivision (a) did not apply to them because they did not suffer an "increase in state tax payable," triggering a duty to report the federal change, is premised upon the asserted applicability of section 19057. Plaintiffs do not dispute that they received a final determination of changes to their federal tax liability resulting in an increase in their state tax liability for the same tax year. Because section 19057 did not preclude defendant from notifying plaintiffs of a proposed state tax deficiency assessment, plaintiffs were required by section 18622, subdivision (a) to report the federal changes increasing their state tax payable.

Thus, defendant's interpretation of section 18622, subdivision (a) prevails. Plaintiffs' failure to comply with their duty under that statute to report the federal tax liability changes dictated the application of section 19060, subdivision (a), pursuant to which defendant was authorized to mail notice of the proposed deficiency assessment *at any time*. Defendant properly notified plaintiffs of the proposed deficiency assessment following the final federal determinations of changes to plaintiffs' federal tax liability.

(representing defendant's attempt to "override" the decision of the Court of Appeal in this case) together with the reason set forth in the Governor's veto message (reflecting the view that the bill retroactively would change tax policy and address an issue pending before this court) establish that the Court of Appeal correctly interpreted section 18622. (Governor's veto message to Assem. on Assem. Bill No. 1630 (2005–2006 Reg. Sess.) July 26, 2005, Assem. Daily J. (Aug. 15, 2005) p. 2716.) For the first time, plaintiffs also suggest that defendant's interpretation would render of no effect section 19063, subdivision (c) (extension of limitations period by general partner of federally registered partnership operates as extension by individual partners). Defendant has filed a responsive supplemental brief observing, with respect to plaintiffs' argument based upon reasons given in the Governor's eventual veto of Assembly Bill No. 1630, that it is the *legislative* intent that is of paramount importance in considering proposed legislation. Plaintiffs' reply supplemental brief asserts that defendant has taken inconsistent positions by advising plaintiffs in 1998 that the applicable statute of limitations had been "reopened" and then subsequently asserting that the applicable period of limitations had not expired. Plaintiffs also have disputed defendant's interpretation of section 19063.

We have rejected the applicability of section 19057, thus rejecting the foundation of the Court of Appeal's (and plaintiffs') construction of section 18622. The existence of the proposed legislation and argument regarding section 19063 does not alter our conclusion.

The parties also have filed a number of requests that we take judicial notice of public documents that include the fiscal year 1999–2000 Operations Report of defendant FTB providing statistical information with regard to tax support and collection activities, the legislative history of Assembly Bill No. 1630 (2005–2006 Reg. Sess.) prior to its consideration and veto by the Governor, and excerpts from legislative material prepared by the Assembly Revenue and Taxation Committee when legislation was under consideration to conform state tax law with federal tax law as revised in 1978. We take judicial notice of these documents pursuant to Evidence Code sections 459, subdivision (a), and 452, subdivision (c), permitting judicial notice to be taken of "[o]fficial acts of the legislative, executive, and judicial departments . . . of any state of the United States." "Official acts include records, reports and orders of administrative agencies." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 [104 Cal.Rptr.2d 439].)

## III

The judgment of the Court of Appeal is reversed and the case is remanded for further proceedings consistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Appellant's petition for a rehearing was denied August 16, 2006.