Filed 11/5/24  Rimokh v. California Franchise Tax Board CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JACK RIMOKH et al., Plaintiffs and Appellants, v. CALIFORNIA FRANCHISE TAX BOARD, Defendant and Respondent. | B329492 Los Angeles County Super. Ct. No. 21STCV33765 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Affirmed.

The Law Offices of Joseph A. Broyles and Joseph A. Broyles for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Senior Assistant Attorney General, Michael D. Gowe, Supervising Deputy Attorney General, Elizabeth Vann, Deputy Attorney General, for Defendant and Respondent.

# INTRODUCTION

Jack Rimokh and Joelle Rimokh (collectively, the Rimokhs) sued the California Franchise Tax Board (FTB) seeking a refund of monies allegedly overpaid for the 2008 and 2009 tax years. In support of their claim, they alleged FTB failed to timely mail a notice of proposed deficiency assessment (NPA), which they contend was required by Revenue and Taxation Code[1] section 19059, subdivision (a). Consequently, they alleged, FTB was prohibited from assessing or collecting any additional taxes based on their amended 2008 and 2009 state income tax returns. The Rimokhs filed those amended returns after the Internal Revenue Service (IRS) audited their 2008 and 2009 federal tax returns and increased their federal income tax liability for each year.

The trial court granted summary judgment in favor of FTB, concluding FTB did not have to issue NPAs to the Rimokhs for the 2008 or 2009 tax years because it did not assess a deficiency for either year. Thus, the trial court concluded the limitations periods set forth in section 19059 did not apply and rejected the Rimokhs' assertion that they were entitled to a refund based on FTB's noncompliance with that statute. We affirm.

# BACKGROUND

After receiving an extension, the Rimokhs filed a joint state tax return for the 2008 tax year on October 15, 2009. They also obtained an extension for the next year and filed a joint return for the 2009 tax year on October 15, 2010. By the latter date, they had no outstanding tax liability for the 2008 and 2009 tax years,

---

1    All undesignated statutory references are to the Revenue and Taxation Code.

having paid all taxes and interest due based on the information reported in their returns.

The IRS began audits of the Rimokhs' 2008 and 2009 federal income tax returns on November 29, 2012 and February 24, 2011, respectively. Subsequently, on January 24, 2018, the Rimokhs and the IRS entered into a closing agreement[2] addressing their tax liability for the 2008 and 2009 tax years. Pursuant to the closing agreement, on May 25, 2018, the IRS assessed approximately $6.5 million and $7.2 million in additional federal income tax for the 2008 and 2009 tax years, respectively. Then, on July 9, 2018, the IRS notified FTB's Audit Division of its adjustments to the Rimokhs' 2008 and 2009 federal income tax returns.

As a result of the IRS's audit and its adjustments to their federal income tax returns, the Rimokhs filed amended state tax returns for the 2008 and 2009 tax years on July 15 and July 13, 2018, respectively. For the 2008 tax year, their amended return reported that, compared to their original return, they earned approximately $16.7 million in additional income and owed $1.7 million in additional state income tax. For the 2009 tax year, the Rimokhs' amended return reported that, compared to their original return, they earned approximately $18.4 million in additional income and owed approximately $1.9 million in additional state income tax. The additional tax liability reported

---

2    "A closing agreement is a written agreement between an individual and the Commissioner [of Internal Revenue] which settles or 'closes' the liability of that individual with respect to any internal revenue tax for a taxable period." (*Miller v. Internal Revenue Service* (*In re Miller*) (Bankr. 9th Cir. 1994) 174 B.R. 791, 796.)

on the amended returns did not include statutorily-mandated interest accruing on the balances due for either tax year.

After examining the IRS's adjustments to the Rimokhs' federal income tax obligations for 2008 and 2009, a technician for FTB issued NPAs for both years. The NPA for the 2008 tax year proposed to assess additional taxes, penalties, and interest totaling $1,505.91. For the 2009 tax year, the NPA proposed to assess additional taxes, interest, and penalties totaling $3,151,445.94. Both NPAs were dated July 15, 2020 and stated the proposed assessments were "based on information provided to [FTB] by the [IRS]."

In mid-September 2020, the Rimokhs protested the NPAs, arguing they should be "dismiss[ed] . . . for lack of standing" because they were not mailed within the requisite time period set forth in section 19059, subdivision (a). FTB withdrew the NPAs on September 23, 2020.

In conjunction with its review of the protests and its decision to withdraw the NPAs, FTB also analyzed the Rimokhs' amended 2008 and 2009 returns. It accepted the tax liabilities reported on those returns and reconciled the Rimokhs' prior payments against their remaining tax liabilities, penalties, and interest due. Ultimately, FTB determined the Rimokhs satisfied their tax liability for the 2008 tax year in December 2017, but owed a balance of approximately $1.3 million for the 2009 tax year. Thus, on the same date it withdrew the NPAs, FTB issued a "State Income Tax Balance Due Notice" informing the Rimokhs that they owed a balance of approximately $1.3 million on their 2009 state income tax account. FTB calculated this balance by subtracting an overpayment it received for the 2008 and 2009 tax years in December 2017 from the sum of the amount owed per

4

the Rimokhs' amended return and the interest accrued since April 15, 2010.

Through various payments made between December 2017 and December 2020, as well as FTB's transfer of an overpayment it received for the 2015 tax year, the Rimokhs paid off their balance for the 2009 tax year on December 21, 2020. Two of the payments were accompanied by notations indicating they were intended for amounts due under the NPAs previously issued and withdrawn. Specifically, in July 2020, the Rimokhs made an electronic payment to FTB of $1,505.91 for the 2008 NPA. And on December 21, 2020, they made an electronic payment of $1,238,095.90 for the 2009 NPA. FTB credited both payments to the balance on the Rimokhs' account for the 2009 tax year.

In February 2021, the Rimokhs filed claims for refunds for the 2008 and 2009 tax years. FTB records reflect it took no action on their claims.

Consequently, in September 2021, the Rimokhs filed a complaint asserting a single claim for refund of tax under sections 19382 and 19385. They allege they are entitled to refunds of $1,505.91 plus interest for the 2008 tax year and $3,234,534.96 plus interest for the 2009 tax year because FTB's assessments of those taxes in September 2020, which they paid under protest, "were made after the expiration of the applicable statute of limitation . . . ."

The parties filed cross-motions for summary judgment. Following a hearing, the trial court granted FTB's motion, denied the Rimokhs' motion, and entered summary judgment in favor of FTB. In so doing, the trial court first observed that, under the relevant statutory provisions, FTB must issue an NPA only when it determines the tax liability reported on a taxpayer's return is

5

less than the amount due by law. Consequently, the trial court reasoned, the limitations periods for issuing NPAs do not apply where, as here, FTB accepts the taxpayers' calculation of the taxes they believe they owe as reported on their returns. Accordingly, the court determined that because no NPAs were required in this case, the limitations periods for issuing NPAs – including section 19059, subdivision (a) – did not apply and, therefore, the Rimokhs were not entitled to a refund based on FTB's failure to issue NPAs within the period enumerated in section 19059.

The Rimokhs timely appealed the judgment.

## DISCUSSION

### I.    Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid.*) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We must affirm a

6

summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

## II.    Analysis

Seeking reversal of the summary judgment, the Rimokhs maintain they are entitled to a refund, arguing FTB failed to comply with section 19059, subdivision (a) and, consequently, improperly collected the balance due per the notice issued in September 2020. In support of their position, they argue section 19059, subdivision (a) requires FTB to issue an NPA within a certain timeframe to collect any additional taxes due on an amended return filed after an IRS audit results in increased state tax liability. As discussed below, we reject the Rimokhs' contention, as it misapplies the statutes governing whether and when FTB must issue an NPA.

Generally, individuals who earn personal income above a certain threshold in California must file with FTB a return reporting their estimate of the amount of state income tax they owe for the preceding tax year. (See §§ 18501, subd. (a), 18621, 18566.) A taxpayer's estimate of tax liability, however, is not conclusive of the tax due because "the amount payable is fixed by the formal assessment of taxes, and it is the FTB, not the taxpayer, that makes that determination." (*Goldman v. Franchise Tax Bd.* (2012) 202 Cal.App.4th 1193, 1203-1204.) On this point, section 19032 states: "As soon as practicable after the return is filed, the [FTB] shall examine it and shall determine the correct amount of the tax." In so doing, FTB ascertains whether there is a "deficiency" by evaluating whether "the tax disclosed by the taxpayer on an original or amended return,

7

including an amended return reporting federal adjustments pursuant to [s]ection 18622, is less than the tax disclosed by its examination . . . ." (§ 19033, subd. (a); § 19043, subd. (a) [defining "deficiency" as "the amount by which the tax imposed [under the law] exceeds" the sum of "[t]he amount shown as the tax by the taxpayer on an original or amended return" plus "[t]he amounts previously assessed (or collected without assessment) as a deficiency, over–[¶] . . . [t]he amount of rebates . . . made"].)

If FTB discovers a deficiency (i.e., it discovers the tax due under the law is higher than the amount reported on a return), "it shall mail notice to the taxpayer of the deficiency proposed to be assessed." (§ 19033, subd. (a).) Section 19057, subdivision (a) provides the general rule for when an NPA must be issued, stating: "Except in the case of a false or fraudulent return and except as otherwise expressly provided in this part, every notice of a proposed deficiency assessment shall be mailed to the taxpayer within four years after the return was filed." If FTB does not issue an NPA within this limitations period, it cannot assess or collect a deficiency on that return. (*Ibid.*)

Under certain circumstances, however, the deadline by which FTB must issue an NPA may be extended. One such circumstance is when the IRS, or other authorized federal official, makes an adjustment to a taxpayer's federal tax return, which increases the taxpayer's state income tax liability. In this scenario, the taxpayer must notify FTB of the adjustments made "within six months after the date of each final federal determination of the" adjustments. (§ 18622, subd. (a).) Another circumstance is when a taxpayer files an amended federal income tax return, which increases their state income tax liability. (*Id.*, subd. (b).) In that situation, the taxpayer must file an amended

8

state return within six months after filing their amended federal return. (*Ibid.*)

Section 19059 applies when a taxpayer complies with section 18622.[3] With respect to the first scenario described above, section 19059, subdivision (a) states: "If a taxpayer is required by subdivision (a) of [s]ection 18622 to report a change or correction by the Commission of Internal Revenue or other officer of the United States or other competent authority and does report the change or correction within six months after the final determination, or the [IRS] reports that change or correction within six months after the final determination, a notice of proposed deficiency assessment resulting from those adjustments may be mailed to the taxpayer within two years from the date when the notice is filed with the [FTB] by the taxpayer or the [IRS], or within the periods provided in [s]ection 19057, 19058, or 19065,[4] whichever period expires later." Subdivision (b) applies

---

3    The parties do not dispute that the Rimokhs complied with section 18622 by filing their amended 2008 and 2009 state returns within a week after the IRS informed FTB of its adjustments to their federal returns for those tax years. In any event, we note that where a taxpayer does not comply with section 18622, section 19060—as opposed to 19059—sets the deadline by which FTB must issue an NPA.

4    As noted above, section 19057 sets forth the general four-year limitations period for when an NPA must be mailed. (§ 19057, subd. (a).) Section 19058 extends the limitations period to six years in cases where "the taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return . . . ." And section 19065 extends the limitations period when "any taxpayer agrees with the United States Commissioner of Internal

to the second scenario, stating: "If a taxpayer is required by subdivision (b) of [s]ection 18622 to file an amended return and does file the return within six months of filing an amended return with the Commissioner of Internal Revenue, a notice of proposed deficiency assessment in excess of the self-assessed tax on the amended return, and resulting from the adjustments may be mailed to the taxpayer within two years from the date when the amended return is filed with the [FTB] by the taxpayer, or within the periods provided in [s]ection 19057, 19058, or 19065, whichever period expires later." (§ 19059, subd. (b).)

As set forth above, neither section 19059 nor the other relevant statutes require FTB to issue an NPA "[i]n order to assess the tax reported on [an] amended tax return" filed pursuant to section 18622, as the Rimokhs contend. Instead, FTB must issue an NPA only if, upon examination, it discovers a deficiency (i.e., that the taxpayer's income tax liability under the law is higher than their self-reported liability). (§ 19033, subd. (a).) The deadline by which FTB must do so depends on the circumstances, and is governed by several different statutes, including section 19059. But where FTB accepts the tax liability reported on an amended return, and does not seek to impose additional tax as a deficiency on top of the amount self-reported, FTB need not issue an NPA. (See §§ 19033, subd. (a), 19057,

_____

Revenue for an extension or renewals thereof of the period for proposing and assessing deficiencies in federal income taxes for any given year," and requires an NPA to be mailed within "four years after the return was filed or six months after the date of the expiration of the agreed period for assessing deficiencies in the federal income tax, whichever period expires later."

10

subd. (a).) Under those circumstances, since no NPA is required, the deadlines in section 19059 do not apply. (See § 19059.)

That is precisely the situation in this case. Here, the undisputed evidence demonstrates that, after the Rimokhs filed amended state returns for 2008 and 2009 following the IRS's adjustments to their federal returns for those years, FTB did not seek to assess or collect a deficiency for either year. Instead, FTB accepted the Rimokhs' calculation of their tax liabilities, reconciled their prior payments against those liabilities plus penalties and interest due, and determined they had a balance due of approximately $1.3 million for the 2009 tax year as of September 2020. Because FTB did not find a deficiency with respect to the amended state returns, it was not required to issue an NPA before using payments received from the Rimokhs to satisfy the balance due. Therefore, the Rimokhs are not entitled to a refund based on FTB's failure to issue NPAs within the time provided in section 19059, subdivision (a), as that deadline has no application in this case.

As briefly noted above, the Rimokhs offer a starkly different interpretation of section 19059. According to them, section 19059 dictates both whether and when FTB must file an NPA to assess and collect taxes based on an amended return. On this point, they assert subdivision (a) of the statute applies where a taxpayer has filed an amended state tax return as a result of an "involuntary" adjustment to their federal return due to an IRS audit, and requires FTB to issue an NPA within its two-year limitations period whenever FTB seeks to assess and collect *any* taxes stemming from that amended return. By contrast, they argue subdivision (b) applies where a taxpayer must file an amended state return after "voluntarily amend[ing] his federal

11

tax return," and requires FTB to issue an NPA within the specified time period only when it seeks to collect taxes exceeding the amount reported by the taxpayer on the amended return.

We reject the Rimokhs' interpretation of section 19059 as unsupported by the statute's plain language. On its face, the statute does not differentiate between amended returns filed on a "voluntary" or "involuntary" basis. (§ 19059.) Nor does it specify whether *and* when an NPA must be mailed, as the Rimokhs contend. Instead, section 19059 reflects it is limited to addressing the latter issue. The statute presupposes an NPA is required and sets the deadlines by which it must be mailed, depending on whether the taxpayer has taken action under section 18622, subdivision (a) or (b). (See § 19059.) Whether FTB must mail an NPA at all is governed by section 19033, subdivision (a), rather than section 19059. As noted above, section 19033, subdivision (a) states an NPA need only be mailed "[i]f the [FTB] determines that the tax disclosed by the taxpayer on an original or amended return, *including an amended return reporting federal adjustments pursuant to [s]ection 18622*, is less than the tax disclosed by its examination . . . ." (Italics added.)

Having concluded, based on its clear and unambiguous language, that section 19059 does not apply here, we need not address the Rimokhs' arguments predicated upon the statute's legislative history or FTB's publications. "'Our fundamental task [in interpreting a statute] is to determine the Legislature's intent and give effect to the law's purpose. [Citation.] We begin by examining the statute's words "because they generally provide the most reliable indicator of legislative intent.' [Citation.] If the statutory language is clear and unambiguous our inquiry ends.'" [Citation.] In that case, the plain meaning of the statute is

12

controlling, and "'resort to extrinsic sources to determine the Legislature's intent is unnecessary.'"" (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 633-634.)[5]

Finally, we reject the Rimokhs' argument predicated on *Ordlock v. Franchise Tax Bd.* (2006) 38 Cal.4th 897 (*Ordlock*). There, our Supreme Court clarified the relationship between section 19057, subdivision (a), which sets forth the general four-year limitations period in which an NPA must be issued, and sections 19059 and 19060, the statutes describing when an NPA must be issued after the IRS adjusts a taxpayer's federal taxable income and/or tax liability. (*Ordlock*, at pp. 902, 910.) In so doing, it did not address the issue presented here, namely, whether FTB must file an NPA within section 19059, subdivision (a)'s two-year limitations period when FTB does not seek to assess or collect a deficiency arising from an amended return filed under section 18622, and instead collects on the balance due per the taxpayer's self-reported liability on the amended return. (See *id.* at pp. 901-902.) It is well-settled that "[a] case is not authority for a proposition not considered therein or an issue not presented by its own particular facts." (*McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611.) Thus, the Rimokhs' reliance on *Ordlock* is misplaced.

In sum, on the undisputed facts in this case, we agree with the trial court that section 19059 does not apply and, therefore, the Rimokhs are not entitled to a refund based on FTB's noncompliance with the inapplicable statute. Accordingly, the trial court correctly granted summary judgment in favor of FTB.

---

5       For these reasons, the Rimokhs' motion for judicial notice, filed on October 4, 2024, is denied.

13

**DISPOSITION**

The judgment is affirmed. Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.