[No. A128985. First Dist., Div. Three. Jan. 23, 2012.]

STEVEN J. GOLDMAN et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

1194

**COUNSEL**

Amy L. Silverstein, Edwin P. Antolin, Johanna W. Roberts and Charles E. Olson for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Joyce E. Hee and David Lew, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SIGGINS, J.**—Appellants Steven J. Goldman and Azita Etaati (the Goldmans) seek a refund of interest they paid in 2004 on a state income tax deficiency for the 2000 tax year. While they do not contest the tax owed for 2000, which was increased due to their participation in a disallowed tax shelter, they contend California's Franchise Tax Board (FTB) should have suspended

the accrual of interest on the deficiency. The trial court found the Goldmans ineligible for interest suspension, denied their motion for summary judgment, and granted summary judgment for the FTB. We affirm.

Resolution of this appeal involves the interplay of two provisions of the Revenue and Taxation Code.[1] Former section 19116 provided that, with certain enumerated exceptions, the accrual of interest owed on unpaid tax obligations is normally suspended 18 months after a taxpayer files a timely tax return. (Former § 19116, subds. (a) & (b)(1).)[2] This case deals with an enumerated exception to interest suspension that involves section 18622. Section 19116, subdivision (e) specifies that interest suspension does not take effect for taxpayers affected by a federal audit who are required to report a change or correction to their federal taxes to the FTB pursuant to section 18622, subdivision (a).

Section 18622, subdivision (a) requires taxpayers to report the result of a change or correction to a federal tax return "within six months after the date of each final federal determination," but only if the federal change or correction "increase[s] the amount of [state income] tax payable." Resolution of this appeal turns on construction and interpretation of the last sentence of section 18622, subdivision (a) that says a taxpayer must notify the state of federal changes that "increase the amount of tax payable." As we shall explain, the phrase refers to the effect of a federal audit on a taxpayer's return filed for a given year, and the taxpayer's obligation to notify the state does not turn on whether the taxpayer still owes the state money after the conclusion of a federal audit. Thus, the Goldmans' obligation to provide the state notice was not extinguished because they filed amended returns and overpaid their ultimate 2000 state income tax liability before conclusion of the federal audit, and interest on the amount of their increased state tax liability was not suspended.

## BACKGROUND

The Goldmans, a married couple, filed their state income tax return for the 2000 tax year on or about April 15, 2001. Their return reported taxable income of $11,962,859 and a tax liability of $1,109,037. In January 2003, the Goldmans were notified that the Internal Revenue Service (IRS) was going to examine their federal income tax return filed for the 2000 tax year. In August,

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2] The operative statute is the former version of section 19116 (added by Stats. 1999, ch. 931, § 18, p. 6765, eff. Oct. 10, 1999; amended by Stats. 2003, ch. 654, § 5, p. 5016; Stats. 2003, ch. 656, § 5, p. 5043) that was in effect from January 1, 2004, through October 6, 2005. For convenience, we refer to section 19116 with the understanding that we are referring to the former version of the statute.

the Goldmans' accountant requested that the FTB hold its examination of their 2000 income tax return in abeyance until the IRS examination was complete.

In October 2003 the Legislature enacted the voluntary compliance initiative (VCI), which allowed taxpayers who invested in potentially abusive tax shelters to file amended returns that disclosed all income without regard for the effects of the tax shelters, pay the resulting tax and interest and thereby possibly avoid penalties. (§ 19751 et seq.) The VCI was effective from January 1 through April 15, 2004. (§ 19751, subd. (b).) The Goldmans elected to participate in the VCI, and on or around April 15, 2004, before the federal examination of their return concluded, they filed an amended return for the 2000 tax year. Because the amended "VCI return" reversed $82,630,078 in capital losses from a transaction claimed on the Goldmans' 2000 income tax return, it reported increased taxable income of $94,687,041 and an additional $7,693,349 in state tax liability. In their explanation that accompanied the return, the Goldmans stated the return was ameded in accordence with the VCI and that the increased taxable income was due to a change in their federal adjusted gross income reported on line 1b of their state income tax return. The option they selected under the VCI allowed them to seek a refund of amounts reported and paid with the VCI return. They made a payment of $2 million with the VCI return and subsequent installment payments between July 2004 and April 2005 to satisfy the additional tax and interest shown on the VCI return. As of April 2005, the Goldmans paid $1,805,331.64 in interest.

In November 2004, the Goldmans filed a federal "closing agreement" for tax year 2000 with the IRS. The closing agreement reflected federal tax adjustments of disallowed capital losses from the tax avoidance transactions that figured in their state VCI return. The federal adjustments increased the Goldmans' income by $78,749,557 for federal tax purposes, and reflected adjusted gross income of $90,999,902, rather than $94,687,041 as stated in their VCI return.

The Goldmans filed a second amended state tax return for the 2000 tax year on or around April 15, 2005, seeking a refund of excess taxes and interest reported and paid with the VCI return. The refund claim had two components. First, the Goldmans sought a refund of $823,940 in interest they claimed should have been suspended pursuant to section 19116. Second, they claimed a tax refund due to the federal adjusted gross income reflected in the closing agreement that reduced the adjusted gross income reported in their VCI return by $4,466,197.

The FTB agreed the Goldmans were entitled to a refund for overpaid taxes, but it denied their claim for a refund of interest on the ground that they were subject to an exception to interest suspension contained in section 19116,

subdivision (f). The state Board of Equalization (SBE) upheld the FTB's ruling in a summary decision.

The Goldmans then filed this action. Following the filing of cross-motions for summary judgment, the trial court granted the FTB's motion for summary judgment and denied the Goldmans' motion. The Goldmans filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper only if the suit presents no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) On appeal from a grant of summary judgment, the trial court's determination of a question of law is subject to independent review. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67–68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627 [13 Cal.Rptr.2d 755].)

■ When we construe a statute we are required to ascertain the intent of the Legislature to effectuate the purpose of the law. We start with the statutory language and give the words used their ordinary meaning. If the language is clear and unambiguous, we apply it and look no further. If the language supports more than one reasonable interpretation we may consider " ' "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.] Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*People v. Bojorquez* (2010) 183 Cal.App.4th 407, 418–419 [106 Cal.Rptr.3d 915].)

### II. The Statutory Framework

■ Under California law, interest normally accrues on all unpaid or underpaid personal income tax from the date the tax is due until it is paid in full. (§ 19101, subd. (a).) However, interest accrual is suspended if the state "does not provide a notice to the taxpayer specifically stating the taxpayer's liability and the basis of the liability" within a specified notification period. (§ 19116, subd. (a).) The generally applicable notification period is the

18-month period following the later of (1) the date on which the return is filed or (2) the original unextended due date for the return. (Former § 19116, subd. (b)(1).)

The notification period is extended in certain circumstances that afford the FTB more time to notify the taxpayer of a tax deficiency before interest on the underpayment will be suspended. Under section 19116, subdivision (e), the notification period is extended when a taxpayer is required to report federal tax adjustments to the FTB under section 18622, subdivision (a). Section 18622, subdivision (a), requires taxpayers to report "within six months after the date of each final federal determination" when federal tax adjustments increase the amount of income tax payable to the state. (§ 18622, subd. (a).)[3]

██ For a taxpayer who must report federal tax adjustments under section 18622, the extended notification period is either (1) one year after the FTB is notified of the federal adjustments, provided such notice is filed within six months of the final federal determination or (2) if the federal adjustment is reported more than six months after the final federal determination, the notification period ends two years after notice is filed. (§ 19116, subd. (e)(1).) In both situations, the interest suspension period begins the day after the extended notification period ends. (§ 19116, subd. (e)(2).)

### III.   The Trial Court's Ruling

The trial court granted summary judgment for the FTB on two grounds. It first concluded there is no interest suspension where, as here, the FTB never issued a deficiency notice but the taxpayer independently filed an amended return reporting additional taxes after the close of the notification period. The court observed that section 19116 is "silent as to [the] calculation of a suspension period where the taxpayer never receives a formal notice but files an amended return after the notification period." It acknowledged the FTB has an "internal policy (FTB Notice 2005-4) of treating amended returns as if

---

[3] In full, section 18622, subdivision (a) provides: "If any item required to be shown on a federal tax return, including any gross income, deduction, penalty, credit, or tax for any year of any taxpayer is changed or corrected by the Commissioner of Internal Revenue or other officer of the United States or other competent authority, or where a renegotiation of a contract or subcontract with the United States results in a change in gross income or deductions, that taxpayer shall report each change or correction, or the results of the renegotiation, within six months after the date of each final federal determination of the change or correction or renegotiation, or as required by the Franchise Tax Board, and shall concede the accuracy of the determination or state wherein it is erroneous. For any individual subject to tax under Part 10 (commencing with Section 17001), changes or corrections need not be reported unless they increase the amount of tax payable under Part 10 (commencing with Section 17001) for any year."

they were 'notice' for purposes of determining interest suspension under Section 19116," but found that the result in this case was the same whether or not it followed that policy.

In the alternative, the court found that interest suspension was barred because the Goldmans filed their amended return within the notification period as extended under section 19116, subdivision (e): "It is undisputed that [the Goldmans'] California taxable income for tax year 2000 was increased from $11,962,859 to $90,966,490, as reflected in their second amended return. Thus [the Goldmans] were required to report the federal adjustment to California under section 18622. In this case, because [the Goldmans] filed their amended VCI return within the notification period, as extended by subdivision (e), they are not entitled to interest suspension." We agree that the notification period was extended in this case under section 19116, subdivision (e). Since we will affirm on this ground, we need not address the Goldmans' other bases for reversal.

## IV. Analysis

The Goldmans contend that they are entitled to a refund of the interest paid on their 2000 taxes for the period between the date the taxes originally were due in 2001 and April 15, 2004, when the additional taxes were paid, because when they paid the tax in April 2004 the notification period in section 19116, subdivision (a) had lapsed and they were not taxpayers "required by subdivision (a) of Section 18622 to report a change or correction" in their federal taxes. (§ 19116, subd. (e).) The Goldmans base this argument on their claim that "tax[es] payable" as used in section 18622 refers to money owed to the state at the time a federal audit concludes. Since they filed the VCI return and made a payment on account of taxes that was more than they ultimately owed for the 2000 tax year *before* the federal audit concluded, the Goldmans claim the federal determination did not increase their state taxes payable. We disagree.

The Goldmans' construction of section 18622 is not supported by the plain language of the statute, the context of the income tax scheme, or the FTB's interpretation of the taxpayer's obligation to report the results of a federal audit.

Section 18622, subdivision (a) is two sentences long. The first sentence directs taxpayers to report changes or corrections to a federal tax return due to a federal examination "within six months after the date of each final federal determination." The second sentence states that taxpayers need not report the federal changes "unless they increase the amount of tax payable . . . for any year." According to the Goldmans' construction, the second

sentence of section 18622, subdivision (a) qualifies the first so that changes need not be reported unless the taxpayer must pay more in taxes following the date of a final federal determination. But that is not what section 18622 says. The construction urged by the Goldmans implies that "unless," as it is used in the second sentence of section 18622, subdivision (a), refers to a final federal determination. However, by our reading, "unless" refers to federal changes or corrections that may increase state tax liability. In full, the sentence reads: "For any individual subject to [income] tax under Part 10 (commencing with Section 17001), changes or corrections need not be reported unless they increase the amount of tax payable under Part 10 (commencing with Section 17001) for any year." (§ 18622, subd. (a).)

■ In order to give the second sentence the construction urged by the Goldmans one must read it to mean that federal changes need not be reported unless *following the conclusion of a federal audit* there is an increase in the tax payable. But "[w]ords may not be inserted in a statutory provision under the guise of interpretation." (*Kirkwood v. Bank of America* (1954) 43 Cal.2d 333, 341 [273 P.2d 532].) Nothing in the text of section 18622, subdivision (a) leads us to conclude that the ultimate sentence modifies the former in the way urged by the Goldmans. ■ A plain reading of it leads us to conclude that federal changes to a tax return must be reported whenever they change the tax payable by a state taxpayer. The context of the state income tax scheme supports our interpretation.

■ Section 18622 is procedural. It is among the provisions of the Revenue and Taxation Code that effect the administration of the tax laws. (Revenue and Taxation Code, div. 2, part 10.2 ["Administration of Franchise and Income Tax Laws"]; Stats. 1993, ch. 31, § 26, p. 152.) It does not by its terms create or extinguish a liability or compel a taxpayer to pay a deficient tax. (See, e.g., *Mudd v. McColgan* (1947) 30 Cal.2d 463, 467 [183 P.2d 10].) There is nothing in the statutory scheme to suggest section 18622 is intended to confer substantive rights upon the taxpayer. Rather, it specifies, for purposes of fixing the limitation period for the FTB to notice a deficiency, when the taxpayer must advise the FTB of the result of a federal audit. (*Ordlock v. Franchise Tax Bd.* (2006) 38 Cal.4th 897, 908 [44 Cal.Rptr.3d 212, 135 P.3d 628] (*Ordlock*).)

■ The Goldmans' construction would give section 18622 substantive import by making the reporting requirement following a federal audit subject to the taxpayer's control. In situations such as this one, when the taxpayer files an amended return and pays self-assessed taxes due before completion of the federal audit, the Goldmans say there is no reporting requirement. In this scenario, the state would have to act to preserve its ability to collect interest by either notifying the taxpayer of a deficiency or opening an investigation of

the return during the notification period irrespective of a pending federal examination. But California income tax law is based largely upon federal income tax law, and an increase in a taxpayer's federal tax liability will generally result in increased state tax liability. (*Ordlock, supra,* 38 Cal.4th at p. 904.) "State law provides that subject to exceptions, gross income, adjusted gross income, and taxable income for state tax purposes are defined as their equivalents for federal tax purposes. (See §§ 17071, 17072, & 17073, subd. (a).) Thus, an increase in the amount of a taxpayer's federal taxable income generally will signify an increase in the amount of his or her state taxable income." (*Ordlock, supra,* 38 Cal.4th at p. 904.)

In apparent recognition of these equivalencies, the Revenue and Taxation Code generally extends the time for the FTB to fix the amount of tax whenever the taxpayer files an amended return following a federal audit, and specifically allows the state an automatic extension to assess a deficiency whenever the taxpayer agrees to extend the federal deadline for examination. (§§ 19059, 19065.) This statutory scheme contemplates the state's use of information developed in the course of a federal audit "so that the state, and its taxpayers as a whole, may thereby be saved both time and expense in the administration of the state's tax laws. Moreover, by state use of federal tax information, the interests of the particular taxpayer whose return is in question are served, in that he, too, is saved the time and expense of a dual audit of his personal and business affairs, and may in some cases ascertain errors in his state tax return sufficient to justify a claim for refund." (*RKO Teleradio Pictures, Inc. v. Franchise Tax Board* (1966) 246 Cal.App.2d 812, 820 [55 Cal.Rptr. 299].) The Goldmans' construction of section 18622, subdivision (a) frustrates this purpose.

There are also aspects peculiar to the VCI scheme that influence our consideration of what it means when a federal determination increases the amount of state taxes payable as they relate to interest suspension. Under the VCI option selected by the Goldmans, the computation of any accuracy-related penalty that may be assessed is based upon the "difference between the amount of tax shown on the original return and the correct amount of tax for the taxable year" without regard for what may be reported on an amended return. (§ 19752, subd. (b)(5)(B).) It would seem odd that an amended tax return can control the measure of taxes payable following a federal examination and provide the taxpayer an interest holiday, but is disregarded to determine whether a taxpayer can be assessed a penalty.

■ In fact, self-assessment in an amended tax return does not establish the tax payable for any given year. Payments made by a taxpayer that accompany a return are payments on account of taxes imposed for any given year. (§ 19007.) But the amount payable is fixed by the formal assessment of

taxes, and it is the FTB, not the taxpayer, that makes that determination. (§ 19032; see also *Schatz v. Franchise Tax Bd.* (1999) 69 Cal.App.4th 595, 605 [81 Cal.Rptr.2d 719].) The basis for a taxpayer's total tax is the correct computation of net income and the liability to pay taxes continues until it is discharged by the correct computation of net income and payment of taxes due. (*Mudd v. McColgan, supra*, 30 Cal.2d at p. 467.) The filing of an amended return and payment on account of taxes do not have the operative effect under the Revenue and Taxation Code that the Goldmans seek to ascribe to them under their interpretation of section 18622. Their construction makes taxes payable turn on the taxpayer's self-assessment when filing an amended return or making deposits on account of taxes owed rather than the results of a federal audit and a subsequent determination by the FTB. The focus of section 18622 is the effect of the federal changes or corrections, not the taxpayer's attempts to make amends.

■ Finally, the SBE interprets section 18622, subdivision (a) and the extension of the notification period provided in section 19116, subdivision (e) just as we do. The notification period is extended for taxpayers obligated to report federal changes that increase their California taxable income, and early reporting before the federal adjustments become final does not extinguish that obligation or entitle the taxpayer to interest suspension. (*Appeal of Mickelsen*, (SBE, Dec. 12, 2007, No. 2007-SBE-003) 2007 Cal. Tax Lexis 419] (*Mickelsen*).)

We agree with the SBE that we would create opportunity for mischief and undermine the purpose of section 19116, subdivision (e) were we to adopt the Goldmans' interpretation and allow the taxpayer to control when interest on a state tax obligation is suspended in the event of a federal audit. "[A]ppellants' narrow interpretation of subdivision (e) of section 19116 would open a clear avenue for abuse and could render subdivision (e) toothless. The obvious purpose of subdivision (e) is to ensure that the State is not denied interest because of a lengthy dispute at the federal level, over which respondent has no control. Because respondent cannot provide a notice of additional liability until federal adjustments become final, subdivision (e) gives respondent a reasonable period after being informed of the adjustments to issue its own notice. Under appellants' interpretation, a taxpayer who knows that federal adjustments are about to become final could report those adjustments to California a few days before the date of the 'final federal determination,' then claim that subdivision (e) does not extend the notification period. This would whipsaw the State of California, which could not send a notice of liability due to circumstances outside of its control, but which would then be forced to suspend interest anyway. Appellants' interpretation would thus make the application of subdivision (e) purely elective, which could not have been the intent of the Legislature." (*Mickelsen, supra*, at p. *19, fn. 7.)

■ " '[W]hile the ultimate interpretation of a statute is an exercise of the judicial power [citation], when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts "and will be followed if not clearly erroneous." ' " (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 220 [123 Cal.Rptr.2d 735].) We cannot conclude the SBE's construction of section 18622, subdivision (a) is clearly erroneous.

Our reading of section 18622, subdivision (a) is also supported by policy considerations implicit in the SBE's analysis. So long as interest is not suspended, there is an incentive for a taxpayer to pay the additional state tax that the taxpayer anticipates will result from changes due to a federal examination. By doing so, the taxpayer will minimize the amount of interest that will be owed on the amount of tax ultimately determined to be due. By filing an amended return on April 15, 2004, and making an anticipatory payment of additional taxes for the 2000 tax year, the Goldmans availed themselves of the VCI and stopped the accrual of interest on the outstanding tax. There was an incentive and it was to their benefit to do so. Under their construction of section 18622, there would be no incentive or benefit to paying an anticipated liability to the state on account of an understatement of liability on an original return. In order to ensure that interest suspension was in effect for the period of the federal audit, a taxpayer could do nothing but wait until the day before the federal decision was finalized to file an amended return and pay any delinquent tax without interest.

Here, there is no doubt the increased state income tax liability owed by the Goldmans for the 2000 tax year was due to changes to their federal income taxes. When the Goldmans timely filed their 2000 state income tax return in April 2001, they claimed taxable income of $11,962,859 and tax liability of $1,109,037. When they filed their VCI return for 2000 in April 2004 they reported taxable income of $94,687,041 and additional tax liability of $7,639,349. The VCI return states their increased taxable income was due to a change in federal adjusted gross income. Moreover, the Goldmans requested the FTB hold its examination of their 2000 return in abeyance pending the federal audit.

When the federal changes were final, the Goldmans filed an amended VCI return and sought a refund based upon changes to taxable income as finally determined in the audit. Following receipt of this final return, the FTB issued its notice of determination, fixed the Goldmans' income tax liability for 2000, refunded their overpayment, and retained the interest owed on amounts paid with the VCI return. The FTB was correct.

■ The Goldmans owed more in state income taxes as a result of the federal audit. Because the Goldmans were obligated to report the federal tax

adjustments to the FTB under section 18622, subdivision (a), their circumstances fell within section 19116, subdivision (e) and interest on the amount paid with their VCI return was not suspended.

## DISPOSITION

The judgment is affirmed.

Pollak, Acting P. J., and Jenkins, J., concurred.

A petition for a rehearing was denied February 22, 2012, and the opinion was modified to read as printed above.