Filed 6/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN STEUER, as Trustee, etc., et al., | |
| Plaintiffs and Respondents, | A154691 |
| v. | |
| FRANCHISE TAX BOARD, | (City & County of San Francisco Super. Ct. No. CGC-16-556126) |
| Defendant and Appellant. | |

Franchise Tax Board (FTB) appeals from a summary judgment order holding (1) a trust's income, even if entirely derived from California sources, is only taxable under residence-based taxation; and (2) the sole beneficiary of the Paula Trust was a contingent beneficiary. The law is well settled that individuals regardless of their residences are taxed on all income derived from California sources. (Rev. & Tax. Code, § 17041, subd. (i)(1)(B).)[1] The trial court found the Revenue and Taxation Code, however, only imposes taxes on trust income that can be apportioned according to the number of resident fiduciaries, rather than taxing all California source income. (§ 17743.) Thus, Paula Trust was only required to pay tax on one-half of its

---

[1] Undesignated statutory references are to the Revenue and Taxation Code.

1

total California-source income, because out of its two trustees, only one was a California resident.

We reverse, in part, and affirm, in part. Based on our reading of the statute's provisions as a whole, we conclude the Revenue and Taxation Code imposes taxes on the entire amount of trust income derived from California sources, regardless of the residency of the trust's fiduciaries. However, we affirm the trial court's ruling finding the sole beneficiary's interest in the trust income was contingent.

## BACKGROUND

Raymond J. Syufy established the Paula Trust for the sole benefit of his daughter Paula Syufy Medeiros (Medeiros), a California resident. The Paula Trust has two cotrustees—a California resident and a Maryland resident, the fiduciaries.

Paula Trust held a limited partnership interest in Syufy Enterprises LP, which in 2007 sold stock to Century Theatres, Inc.; Century Theatre Holdings, LLC; Cinemark USA, Inc.; and Cinemark Holdings, Inc. Some of the capital gain income from the stock sale was allocated to Paula Trust. Paula Trust's 2007 tax return reported gross income in the amount of $2,965,099—$2,831,336 of capital gain including the stock sale—and the trust paid California income tax in the amount of $223,425.

In 2012, however, the trustees filed an amended 2007 California fiduciary income tax return, requesting a refund of $150,655 in allegedly overpaid income taxes. At the time, Paula Trust claimed the capital gain was incorrectly reported as California-source income. The trustees declared they were "required to apportion the stock gain as California source and non-California-source income . . . according to the number of trustees resident in California" based on section 17743. (All caps omitted.) Section 17743

2

provides: "Where the taxability of income under this chapter depends on the residence of the fiduciary and there are two or more fiduciaries for the trust, the income taxable . . . shall be apportioned according to the number of fiduciaries resident in this state . . . ." (§ 17743.)  According to the trustees, only one-half of the capital gain apportioned to the California trustee was taxable income, while the other half, apportioned to the Maryland trustee, was not taxable.  After an administrative appeal, the Board of Equalization rejected the requested refund, and Paula Trust filed a tax refund suit in 2016.

The trial court granted Paula Trust's motion for summary judgment, and summary adjudication in the alternative, holding both that Medeiros is a contingent beneficiary and that "Paula Trust's California taxable income is determined by apportioning its income pursuant to Rev. & Tax. Code § 17743"—one-half to its California trustee and one-half to its Maryland trustee.  The trial court then entered judgment ordering a refund in the amount of $150,655 of tax, plus interest of $68,955.70.

## DISCUSSION[2]

We review the trial court's ruling on the summary judgment motion and statutory construction de novo.  (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)  Applying a taxing statute to uncontradicted facts is a question of law, and we are not bound to accept the

---

[2] During briefing in this case, FTB filed a request for judicial notice of an additional court record.  We deferred ruling on the request until the merits of the appeal.  (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494.)  We now exercise our discretion and deny the request.  Appellate courts are not required to take judicial notice of documents that were not presented to the trial court.  (*McMahan v. City and County of San Francisco* (2005) 127 Cal.App.4th 1368, 1373, fn. 2.)

3

trial court's findings of fact. (*Communications Satellite Corp. v. Franchise Tax Bd.* (1984) 156 Cal.App.3d 726, 746.)

# I. TAXABLE INCOME OF TRUSTS

Paula Trust contends that under a plain reading of section 17743, the taxable amount of the trust's income depends on the number of trust fiduciaries who are residents of California, regardless of whether the income is derived from California sources. The trial court agreed, determining "Rev. & Tax. Code § 17041(i) and Rev. & Tax. Code § 17951 *et seq.*, which collectively define taxable income of nonresidents"—and requires taxing all California-source income—"do not apply to trusts because those statutes apply only to nonresidents." The court ruled "in light of the differences between trust [*sic*] and individual taxpayers, it is not absurd or unreasonable that the Legislature enacted different tax schemes for each."

We are not persuaded by this interpretation of the statute. Construing a statute requires starting with the statutory language, giving words their ordinary meaning, and applying the language if it is clear and unambiguous. (*Goldman v. Franchise Tax Bd.* (2012) 202 Cal.App.4th 1193, 1199.) We resort to extrinsic sources, such as legislative history, the statute's purpose, and public policy, to determine legislative intent if the language is ambiguous on its face or permits more than one reasonable interpretation. (*Ibid.*) After engaging in that review here, we arrive at the opposite conclusion.

## A. Basis of Taxable Income

Section 17041 articulates two bases for imposing personal income tax in California. First, residents are generally taxed on all of their income, regardless of its source. (§ 17041, subd. (a)(1) ["There shall be imposed for each taxable year upon the entire taxable income of every resident of this state"].) This provision "ensure[s] that individuals who are present in the

4

state, and receiving the benefits and protections of its laws, contribute to it by paying taxes on all income regardless of its source." (*Paine v. Franchise Tax Bd.* (2004) 118 Cal.App.4th 63, 67.)

Second, nonresident taxpayers are taxed on "gross income . . . derived from sources within this state"—California-source income. (§ 17041, subd. (i)(1)(B); see § 17951, subd. (a) ["For purposes of computing 'taxable income of a nonresident or part-year resident' under . . . Section 17041, in the case of nonresident taxpayers the gross income includes only the gross income from sources within this state"].)

Paula Trust contends the definition of "resident"—a term it argues is defined only as "individuals" or "natural persons"—definitively establishes these tax rules on California-source income do not apply to trusts which are simply abstractions. (§§ 17005, 17014, 17015.) However, the statutory definition for "resident" states that it "*includes*" individuals who are in or domiciled in this state. (§ 17014, italics added.) It does not expressly limit the definition of "resident" to "individuals" or "natural persons." (*Ibid.*)

More importantly, Paula Trust's narrow reading of the term "resident" fails to assess that term in context. When harmonized with the additional provisions and statutory framework of the Revenue and Taxation Code, the statute establishes that trusts are taxed on the same basis as individuals. (See § 17002 [statutory definitions govern "[e]xcept where the *context otherwise requires*" (italics added)]; see also *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute"].)

Revenue and Taxation Code section 17731 incorporates the federal Internal Revenue Code trust provisions, which compute a trust's taxable income "*in the same manner as in the case of an individual . . . .* The tax shall be computed on such taxable income and shall be paid by the fiduciary." (26 U.S.C. § 641(b), italics added; see Rev. & Tax. Code, § 17731 subd. (a) ["Subchapter J of Chapter 1 of Subtitle A of the Internal Revenue Code, relating to estates, trusts, beneficiaries, and decedents, shall apply, except as otherwise provided"].) Revenue and Taxation Code section 17041, subdivision (e) similarly mandates calculating a trust's taxable income as if the trust were an individual. (See Rev. & Tax. Code, § 17041, subd. (e) ["There shall be imposed for each taxable year upon the taxable income of every . . . trust . . . taxes equal to the amount computed under subdivision (a) for an individual having the same amount of taxable income"].) Read together, Revenue and Taxation Code section 17041, subdivision (i) directs the taxable income of any nonresident to include income from a California source, and trusts compute taxable income in the same manner as individuals. As a result, trusts are taxed on all California-source income without regard to the residence of fiduciaries.

Even if we were to accept Paula Trust's argument that section 17041, subdivision (e) simply sets equal tax rates for trusts and individuals rather than requires taxing a trust's California-source income, the provision nonetheless requires treating individuals and trusts similarly under the Revenue and Taxation Code. (See *Robinson v. Franchise Tax Board* (1981) 120 Cal.App.3d 72, 77, fn. 4 ["California generally taxes the income of a trust as if it were an individual (§ 17731) under the Personal Income Tax Law"].)

6

## B. Apportionment of Trust Income

The plain language of section 17743 and its rules require taxing all of a trust's California-source income and then apportioning only income derived outside of California according to the number of resident fiduciaries. (§ 17743; Cal. Code Regs., tit. 18, § 17743.)  They do not, as Paula Trust argues, exclude trusts from the provisions taxing all California-source income or make the amount of a trust's income taxable dependent solely on the number and residence of trust fiduciaries.

The income of a trust is taxable to the estate or trust.  (§ 17742, subd. (a).)  Section 17742 provides, in relevant part, the "tax applies . . . to the entire taxable income of a trust, *if* the fiduciary or [noncontingent] beneficiary . . . is a resident." (§ 17742, subd. (a), italics added; see *McCulloch v. Franchise Tax Bd.* (1964) 61 Cal.2d 186, 195 [tax is appropriate "since that state provides to the trustees the protection requisite to the receipt and control of the disposition of trust income"].)  This provision assumes only one resident fiduciary or beneficiary.  Recognizing that trusts may have multiple fiduciaries who live outside of California, section 17743— as its title "Trust; Taxability dependent on residence of fiduciary" indicates— addresses the taxation of income received by a trust with multiple trustees with different residences.  (§§ 17743, 17744.)

Section 17743 then applies in the limited circumstance "[w]here the taxability of income under this chapter *depends on the residence* of the fiduciary"—meaning the income is derived from non-California sources since the only basis for taxing the income is residency—"and there are two or more fiduciaries for the trust . . . ." (§ 17743, italics added.)  In that situation, the non-California-source income that is taxable under section 17742 "shall be

7

apportioned according to the number of fiduciaries resident in this state . . . ." (§ 17743.)

Even if we stop reviewing section 17743's language there, the statute demonstrates that only non-California-source income must be apportioned to resident fiduciaries. (§ 17743.) The statute, however, goes further, noting that apportionment must be "pursuant to rules and regulations prescribed by the Franchise Tax Board"—rules that are expressly incorporated into the statute and language which Paula Trust curiously ignores.

The FTB regulations provide: "[T]he trust is taxable upon (a) all net income . . . from business carried on within this State, from real or tangible personal property located in this State, and from intangible personal property having a business or taxable situs in this State . . . and; (b) that proportion of the net income . . . from all other sources which the number of fiduciaries who are residents of this State bears to the total number of fiduciaries." (Cal. Code Regs., tit. 18, § 17743, 1st par. (Regulation 17743).) The statute is clear. The FTB promulgated rules for apportioning trust income when there are multiple resident and nonresident fiduciaries. The statute requires taxpayers to follow those rules. When we read the statute and the regulation together, as required by the plain language of the statute, a trust is taxed on all California-source income, regardless of whether the fiduciary is a nonresident or not. Then, non-California-source income is apportioned between California and non-California fiduciaries. (Cal. Code Regs., tit. 18, § 17743; see §§ 17041, subds. (e), (i)(1)(B), 17731, subd. (a), 17743.)

We reject Paula Trust's circular argument this regulation is invalid or fails to comport with the plain terms of the statute. (See Gov. Code, § 11342.2 [regulations promulgated by state agencies must be "consistent and not in conflict with the statute and reasonably necessary to effectuate the

8

purpose of the statute"].) As noted above, the regulation properly follows the statute and provides rules for apportioning only non-California-source income to resident fiduciaries as required by section 17743.

## C. Legislative History

"Although we need not go further because the statutory language is unambiguous, we will 'look to legislative history to confirm our plain-meaning construction of [the] statutory language.' " (*Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 920, citing *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046.)

### *1. 1935 and 1937 Personal Income Tax Acts*

The Personal Income Tax Act of 1935 (1935 Code), modeled after the federal tax structure, treats a trust as a separate economic entity. (*McCulloch v. Franchise Tax Bd.*, *supra*, 61 Cal.2d at p. 191.) The 1935 Code imposed taxes upon "the entire net income of every resident of this State and upon the net income of every nonresident which is derived from sources within this State . . . ." (Stats. 1935, ch. 329, § 5(a), p. 1093.) Additionally, it created the rule that the "taxes imposed by this act upon individuals shall apply to, and be imposed upon, the income of . . . property held in trust" and requires computing the trust's tax "upon the net income of the estate or trust . . . except" as otherwise provided. (Stats. 1935, ch. 329, § 12(a), (b), pp. 1103–1104; see § 17731.) These provisions parallel those in the Internal Revenue Code, taxing foreign trusts on the amounts of "[g]ross income from sources within the United States . . . ." (26 U.S.C. § 643(a)(6)(B).)

Section 12(b) of the 1935 Code created a series of provisions applicable to trusts. (Stats. 1935, ch. 329, § 12(b), pp. 1104–1105.) Among them were rules identifying the taxable income of a trust as "(1) The income from real property and tangible personal property located and from business

9

transacted in this State. [¶] (2) The income from intangible property with a situs in this State. [¶] (3) The income from real property and tangible personal property located outside this State and the income from intangible property with a situs outside this State" when one of the various combinations of residences of beneficiaries, fiduciaries, or settlors identified in an exhaustive list was present.[3]  (Stats. 1935, ch. 329, § 12(b), p. 1104.)

Section 12 of the 1935 Code also created language essentially similar to current Revenue and Taxation Code section 17743:  "Where the taxability of income under this section depends on the residence of the fiduciary and there are two or more fiduciaries for the estate or trust, the income taxable under this section shall be apportioned according to the number of fiduciaries resident in this State, such apportionment being determined according to rules and regulations prescribed by the commissioner."  (Stats. 1935, ch. 329, § 12(b), p. 1104.)

The parties primarily dispute the significance of the 1937 Personal Income Tax Act amendments (1937 amendments), which largely eliminated section 12(b), including subsections (1) and (2)—the rules for identifying taxable California-source income of trusts.  (See Stats. 1937, ch. 668, § 8, p.

_____

[3] Those combinations are:  "(A) Where the beneficiary and the fiduciary and the settlor are all residents of this State. [¶] (B) Where the beneficiary and the fiduciary are residents of this State regardless of the residence of the settlor. [¶] (C) Where the beneficiary and the settlor are residents of this State regardless of the residence of the fiduciary. [¶] (D) Where the beneficiary is a resident of this State regardless of the residence of the fiduciary and the settlor. [¶] (E) Where the fiduciary is a resident of this State regardless of the residence of the beneficiary and the settlor. [¶] (F) Where the settlor is a resident of this State regardless of the residence of the beneficiary and the fiduciary. [¶] (G) Where the fiduciary and the settlor are residents of this State regardless of the residence of the beneficiary."  (Stats. 1935, ch. 329, § 12(b)(3), p. 1104.)

1844.)  Paula Trust contends this demonstrates the Legislature's intent to entirely eliminate taxing trusts on income derived from California sources. We disagree.

The 1937 amendments did not alter the substantive provisions, first, requiring taxing individuals on California-source income and, second, requiring the "net income of the estate or trust shall be computed in the same manner and on the same basis as the case of an individual."  (See Stats. 1937, ch. 668 [not amending § 5], § 8, pp. 1844–1846 [amending § 12(c), (d) computing income].)  The Legislature retained section 12(c)'s language apportioning taxable income to instances "[w]here the taxability . . . depends on the residence"—tax income derived outside California when it could only be reached by virtue of the fiduciaries' residence.  (See Stats. 1937, ch. 668, § 8, pp. 1844–1845 [amending § 12(c), (d) computing income].)

If the Legislature eliminated California's ability to tax a trust's California-source income, the phrase in current Revenue and Taxation Code section 17743 "[w]here the taxability . . . depends on the residence" would serve no purpose.  (See *People v. Hudson* (2006) 38 Cal. 4th 1002, 1010 [interpretations that render statutory terms meaningless as surplusage should be avoided].)  Residency would be the only basis for taxing trust income, so there would be no reason to identify circumstances under which taxation depends on residence.  However, because taxability of income depends on two distinct bases—residence or California-source income—this legislative history and the language that the 1937 amendments retained in section 12 of the 1935 Code demonstrate that the Legislature intended trusts would continue to be taxed on California-source income.  (*Davis v. Franchise Tax Board* (1977) 71 Cal.App.3d 998, 1002.)

11

Relying on *Gikas v. Zolin* (1993) 6 Cal.4th 841, Paula Trust nonetheless argues the Legislature intended to eliminate tax on trust income from " 'sources within this state' " because that language is present in sections 17734 and 17953—relating to determining the source of income and taxability of a nonresident *beneficiary's* income based on source—and absent from sections 17742 and 17743—determining taxability of a *trust's* income based on residency. (See *id.* at pp. 851–852 [determining only acquittals in criminal proceedings have a preclusive effect on subsequent administrative proceedings]; §§ 17734, 17953.) This reliance is misplaced.

The *Gikas* court noted the omission of language from one specific section of a statute demonstrated the Legislature's intent to limit the reach of that *specific* section. Here, in contrast, Paula Trust argues the omission of California-source language from two sections of a statute—sections 17734 and 17953—indicates the intention to eliminate it from another—sections 17743 and 17744. (§§ 17734, 17743, 17744, 17953.) *Gikas* does not support that interpretation.

### 2. *Administrative Interpretations*

The contemporaneous comments to regulations interpreting these trust provisions bolster our holding. (See *Western Oil & Gas Assn. v. Air Resources Board* (1984) 37 Cal.3d 502, 520 [as a "contemporaneous construction of a statute by an administrative agency charged with its enforcement, the [agency's] view is entitled to great weight"].) Regulation 17743 was originally promulgated in 1936 after the Legislature passed the 1935 Code. The 1936 regulation contained the bifurcated, two-step apportionment method that appears in current regulation governing apportionment. (Cal. Code Regs., tit. 18, § 17743; cf. Cal. Franchise Tax Bd., Legal Ruling No. 238 (Oct. 27, 1959) ["When the entire income of a trust is derived from sources outside of

12

California, and at least one of the trustees and at least one of the beneficiaries are California residents, both Sections 17743 and 17744 of the Personal Income Tax Law are applicable. Each section is applied after deducting from total income that portion attributable to the other section"].)

After the 1937 amendments, the Franchise Tax Commissioner acknowledged new regulations were "necessitated by the amendments to the act . . . ." However, the revised 1938 regulations left the rules for apportioning trust income substantively the same. In the preface to the revised 1938 regulations, the commissioner characterized the 1937 amendments to these Revenue and Taxation Code trust provisions as "minor." Indeed, the 1937 amendments also eliminated section 12(b)(3) which previously identified trust income as including non-California-source income and its listed beneficiary and fiduciary combinations for determining when this income could be taxed. (See Stats. 1937, ch. 668, § 8, pp. 1838–1839.) Rather than eliminating the ability to tax trusts based on their California-source income, it appears, as relevant here, the amendments primarily removed superfluous language.

## D. Effectuating Legislative Intent

Our reading and interpretation of these tax statutes effectuates the purpose of the statute and avoids results that are contrary to legislative intent. (See *Taiheiyo Cement U.S.A., Inc. v. Franchise Tax Bd.* (2012) 204 Cal.App.4th 254, 259–260; *Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 759 [preferring an interpretation in favor of a taxpayer only when a tax statute's language is ambiguous].) Our Supreme Court has noted although " 'the complexity of the trust itself and of the relations of the parties thereto complicates the problem of effective taxation, it should not obstruct the claims of a state to tax trust income, so far as possible, as it would in the

13

absence of a trust. . . . It should, therefore, be taxed so far as possible upon the same basis as other taxpayers.' " (*McCulloch v. Franchise Tax Board*, *supra*, 61 Cal.2d at p. 197, fn. 9.) The trial court's decision upends this policy.

Paula Trust readily admits the trial court's ruling results in California's being unable to tax trust income if the trust does not have any resident trustees or noncontingent beneficiaries. However, it asserts this interpretation does not result in the trust's avoiding taxes on California-source income. Instead, Paula Trust argues the portion of the income that is not taxed to the trust will be taxed under either section 17734 or section 17953 if distributions are made to nonresident beneficiaries, or section 17745 if a distribution is made to a resident beneficiary.

This is unconvincing. First, trusts and individuals are taxed on their income in the year in which it is received. (§§ 17041, subds. (a), (e); *McCulloch v. Franchise Tax Board*, *supra*, 61 Cal.2d at pp. 189–190 [trusts incurred tax liability on its income earned "during *each of the five prior years as it was earned*"].) The trial court's ruling effectively eliminates this rule since a trust without resident trustees or beneficiaries will not be taxed on any annual accumulated income.

Second, section 17745 is only applicable "[i]f the trustee fails to pay the tax for the trust *annually as it earns the income . . . .*" (*McCulloch v. Franchise Tax Board*, *supra*, 61 Cal.2d at pp. 191, 192 & fn. 4 [interpreting former § 18106, now current § 17745]; see § 17745, subd. (b) ["If no taxes have been paid on the current or accumulated income of the trust because the resident beneficiary's interest in the trust was contingent such income shall be taxable to the beneficiary when distributed or distributable to him or her"].) Rather than excusing a trust from making tax payments on its annual

14

income, section 17745 is a mechanism to recover income if the trust fails to pay the appropriate amount of taxes.

Third, there is no requirement that the trust distribute all income to the beneficiary. And a beneficiary is only taxed on the amount of trust income that is distributed, not the total amount accumulated by the trust in a particular year. (§§ 17041, subd. (a), 17734.) Thus, the beneficiary may be subject to a different tax rate in the year of distribution than the trust would have been in the year the California-source income was received. (§§ 17041, subds. (a)(1) [identifying higher tax rates for larger amounts of annual income received], (e).)

Accordingly, we conclude Paula Trust has not shown section 17743 eliminates taxation on a trust's California-source income. The trial court erred in granting Paula Trust's motion for summary judgment on that issue.

## II. CONTINGENT BENEFICIARY

Finally, FTB contends the trial court erred finding that Medeiros is a contingent beneficiary as a matter of law. We do not agree.

Under section 17742, trust income may also be taxed based on residency, without regard to source, if there is a noncontingent California beneficiary. (§ 17742.) Where a trustee has absolute discretion to allocate net trust income to the beneficiary, the beneficiary has a contingent interest in the distribution. (*Estate of Canfield* (1947) 80 Cal.App.2d 443, 451–452; Cal. Franchise Tax Bd., Technical Advice Mem. 2006-0002 (Feb. 17, 2006) p. 2 ["A resident beneficiary whose interest in a trust is subject to the sole and absolute discretion of the trustee holds a contingent interest in the trust"].) "The intention of the settlor as shown by the document creating the trust is the most important single element in the determination of the rights of the trustee." (*Estate of Miller* (1964) 230 Cal.App.2d 888, 908–909 (*In re Miller*).)

15

Accordingly, we review the trust document to determine whether there are any limitations on a trustee's discretion to distribute income to a beneficiary. (See Cal. Franchise Tax Bd., Technical Advice Mem. 2006-0002 (Feb. 17, 2006) pp. 3–4 ["[t]he extent of the interest of the beneficiary of a trust depends upon the manifestation of intention of the settlor"].)

Here, the Paula Trust document grants "sole absolute discretion" to the cotrustees to make distributions of trust income and principal, but that authority "shall not *require* the Trustee to make any distribution to any person." (Italics added.) Instead, the document simply authorized, rather than mandated, the trustees to distribute as much net income or principal of the trust as the trustee deemed to be in the beneficiary's best interests, but the determination of the amount to distribute was also in the trustee's sole absolute discretion.

This "best interests" language does not, as FTB asserts and relying on *In re Miller*, limit the trustee's discretion. In that case, the settlor intended the trust to support one of the beneficiaries, and the trustee owed a duty "to make allowances for [the beneficiary's] support and maintenance . . . ." (*In re Miller*, *supra*, 230 Cal.App.2d at p. 909.) The court determined the trustee abused his discretion by failing to make any distributions "sufficient to keep [the beneficiary] alive, let alone to maintain her in the condition and situation to which she was accustomed." (*Id*. at pp. 909–910.)

The trust's provisions here are quite distinguishable. The trustees are not *required* to make distributions to support Medeiros. Although the trust included various examples of distributions that would be in the best interest of the beneficiary—including permitting the beneficiary to travel for education or pleasure, purchasing a residence or investing in business—the trust expressly stated these examples were "intended solely as a precatory

16

guide to the Trustee and shall in no way be construed to alter, limit or enlarge the discretions and powers conferred upon the Trustee by any other provision hereof nor to require the Trustee to make any distribution to any beneficiary." If anything, the decision in *In re Miller* is only relevant here for the limited and uncontroversial premise that "[e]ven where the trustee has discretion . . . , the court will not permit him to abuse the discretion." (*In re Miller*, *supra*, 230 Cal.App.2d at p. 907.) Like the trial court, we find the trust instrument's plain and unambiguous terms provided the trustees with sole and absolute discretion to make distributions to Medeiros.

FTB further asserts aside from reviewing the trust instrument, there must be a factual inquiry to determine the specific nature of a beneficiary. In FTB's opinion, the facts demonstrate Medeiros's interest in the trust income is noncontingent since the trustees notified her of future distributions, she relied on those distributions in making certain financial choices, and she directed how the trustees would pay the distributions.[4]

Those actions do not change that the distributions are conditioned upon the trustee's discretion to approve or make them. (See *NC Dept of Rev v. Kim Rice Kaestner 1992 Trust* (2019) 588 U.S. ___ , ___ [139 S.Ct. 2213, 2223] ["by reserving sole discretion to the trustee, the Trust agreement still deprived

---

[4] The unique circumstances presented in *Flato v. Commissioner of Internal Revenue* (5th Cir. 1952) 195 F.2d 580—a trust in which two brothers were both trustees and beneficiaries for themselves, and a third brother beneficiary—do not help FTB's argument. (*Id.* at p. 581.) The beneficiaries in that case requested and received whatever amounts of trust income they desired, and the Fifth Circuit determined the trial court properly reviewed the " 'whole nexus of relations between the settlor, the trustee and the beneficiary' . . . ." (*Id.* at pp. 582–583.) However, the court limited the ruling to that particular case, noting "the beneficiaries possessed such command over the distribution of the income of the trusts, such income, whether distributed or not, is taxable to them." (*Id.* at p. 583 & fn. 3.)

17

[beneficiaries] of any entitlement to demand distributions or to direct the use of the Trust assets in their favor"].) As FTB's own technical memorandum notes, a contingent beneficiary "cannot compel the trustee to give him any portion of the income where the trust gives the trustee absolute discretion as to the amounts of income to distribute." (Cal. Franchise Tax Bd., Technical Advice Mem. 2006-0002 (Feb. 17, 2006) p. 3, fn. 3.) While Medeiros could certainly request distributions or assign distributions once she received them to other trusts or various financial arrangements, she "cannot be certain that [s]he will ever enjoy any of [the] proceeds of the trust. Consequently, where the extent of the interest of the beneficiary is dependent upon the exercise of discretion by the trustee, that interest is contingent." (*Ibid.*)

The settlor intended the trustees to have absolute discretion, and we affirm the trial court's finding Medeiros is a contingent beneficiary.

## DISPOSITION

The summary judgment in favor of Paula Trust is reversed. On remand the trial court shall enter an order of summary adjudication of Medeiros being a contingent beneficiary.

_____
Jackson, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.


A154691/*Steuer v. Franchise Tax Bd.*


19

A154691/Steuer v. Franchise Tax Bd.

Trial Court:        Superior Court of the City and County of San Francisco

Trial Judge:        Harold E. Kahn, J.

Counsel:            Xavier Becerra, Attorney General, Diane Spencer Shaw,
                    Assistant Attorney General, Lucy F. Wang, Karen W.
                    Yiu, and Heather B. Hoesterey, Deputy Attorneys
                    General, for Defendant and Appellant.

                    Antolin Agarwal, Edwin P. Antolin, Monty Agarwal, and
                    Rachel L. Chanin for Plaintiffs and Respondents.